**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SHENZHEN LAIBO TECHNOLOGY CO., LTD.; LIVING SKYLIGHT INC.; BOHUA HUAGAOLI ELECTRONICS TECHNOLOGY CO., LTD.; YAN'AN SHANGYE NETWORK TECHNOLOGY CO., LTD.; SHENZHEN HTPOW ELECTRONIC COMMERCE CO., LTD; SHENZHEN LIANSHENGTUO TECHNOLOGY CO., LTD.; SHENZHEN SHANGJIAMEIPIN E-COMMERCE CO., LTD.; AND SHENZHEN WEIDONGZHIXIN TECHNOLOGY CO., LTD., | Case No. 6:22-cv-00001-ADA |
| Plaintiffs/Counterclaim Defendants, | |
| v. | |
| XEBEC, INC. | |
| Defendant/Counterclaim Plaintiff. | |

**<u>XEBEC, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.     **INTRODUCTION** ................................................................................1

II.    **BACKGROUND** ................................................................................2

    A.    '757 Patent ................................................................................2

    B.    '762 Patent ................................................................................3

    C.    Person of Ordinary Skill in the Art .............................................5

III.    **ARGUMENT** ................................................................................5

    A.    The Disputed Terms of the '757 Patent .......................................5

        1.    "hung" ................................................................................5

        2.    "a bracket" ................................................................................9

        3.    "for engagement" ....................................................................12

    B.    The Disputed Terms of the '762 Patent .....................................15

        1.    "engaged with and slidable" and "in sliding engagement"15

        2.    "coupled to" ................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. 2013)............................................................................. 10

*Bradford Co. v. Conteyor N. Am., Inc.*,
  603 F.3d 1262 (Fed. Cir. 2010)............................................................................. 19

*C&M Oilfield Rentals, LLC v. Apollo Lighting Sols. Inc.*,
  No. 6:21-CV-00544-ADA, 2022 U.S. Dist. LEXIS 65180 (W.D. Tex. Apr. 7, 2022) ........ 6, 19

*Daiichi Sankyo Co. v. Apotex, Inc.*,
  501 F.3d 1254 (Fed. Cir. 2007)............................................................................... 5

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012)............................................................................. 17

*Dogleg Right Partners, LP. v. Taylor Made Golf Co.*,
  No. 2:07-CV-533-TJW-CE, 2011 U.S. Dist. LEXIS 29474 (E.D. Tex. Mar. 22, 2011).......... 20

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)......................................................................... 10, 19

*Envtl. Designs, Ltd. v. Union Oil Co. of California*,
  713 F.2d 693 (Fed. Cir. 1983)................................................................................ 5

*Foundry Networks v. Lucent Techs., Inc.*,
  No. 2-04-CV-40 (TJW), 2005 U.S. Dist. LEXIS 46840 (E.D. Tex. May 24, 2005) ............... 19

*Intergraph Corp. v. Intel Corp.*,
  No. 2:01-CV-160 (TJW), 2002 U.S. Dist. LEXIS 27117 (E.D. Tex. June 3, 2002) ............... 19

*Kaneka v. Xiamen Kingdomway Group*,
  790 F.3d 1298 (Fed. Cir. 2015)............................................................................. 10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)............................................................................ 6, 16

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)............................................................................. 17

*Modern Font Applications LLC v. Red Lobster Hospitality LLC*,
  No. 6:21cv470-ADA, 2022 U.S. Dist. LEXIS 38316 (W.D. Tex. Mar. 4, 2022) ................... 10

*Optis Wireless Tech., LLC v. Huawei Device Co.*,
  No. 2:17-cv-123-JRG-RSP, 2018 U.S. Dist. LEXIS 7711 (E.D. Tex. Jan. 18, 2018)............. 10

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)......................................................... 6, 9, 10, 12, 16

*UV Partners, Inc. v. Proximity Sys.*,
  No. 20-cv-4120, 2022 U.S. Dist. LEXIS 124607 (S.D. Tex. July 14, 2022) .......................... 12

*Vitronics Corp. v. Conceptronic*,
  90 F.3d 1576 (Fed. Cir. 1996)............................................................................... 12

## CLAIM TERMS IN DISPUTE

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|--------|-----------|-------------------------------|-------------------------------|
| '757 | "hung" | "fastened from above with no support from below; suspended" | Plain and ordinary meaning |
| '757 | "a bracket" | "a structure in the shape of an L adapted to support a load" | Plain and ordinary meaning |
| '757 | "for engagement" | "for interlocking or meshing under the action of friction and/or gravity in use" | Plain and ordinary meaning or "for connection" |
| '762 | "engaged with and slidable" | "interlocked or meshed with and capable of sliding" | Plain and ordinary meaning or "connected and slidable" |
| '762 | "in sliding engagement" | "interlocked or meshed with and capable of sliding" | Plain and ordinary meaning or "in a sliding connection with" |
| '762 | "coupled to" | "directly connected to" | Plain and ordinary meaning |

## EXHIBITS

This Brief is accompanied by the Declaration of Scott P. Amy in Support of Xebec, Inc.'s Responsive Claim Construction Brief ("Amy Decl."). "Ex. __" refers to the exhibits attached to the Amy Decl.  Further, references to patent columns and lines are signified by the following shorthand: [Column No.] : [Line No.], *e.g.*, Column 1, line 1-5 is shown as Ex. 1, 1:1-5.

iv

## I.    INTRODUCTION

Defendant/Counterclaim Plaintiff Xebec, Inc. ("Xebec") asserts that certain of Defendant Shenzhen Laibo Technology Co, Ltd., et al.'s ("Ofiyaa") auxiliary screen mounting systems infringe 17 claims of U.S. Patent Nos. 9,395,757 ("the '757 Patent") and 10,809,762 ("the '762 Patent") (collectively, "the Patents-in-Suit").  Out of the 17 asserted claims, 6 terms or phrases are disputed by the parties.

Ofiyaa's approach to many, if not all, of the disputed terms is problematic and contrary to well-established claim construction principles, as Ofiyaa attempts to define terms solely to suit its needs in this litigation. While Xebec asserts that the term "hung" should be given its plain meaning, Ofiyaa attempts to define this term (and the limitation in which it appears) to be limited to one preferred embodiment, which is improper. In doing so, Ofiyaa ignores the plain language of the claim limitation in which this term is used and would improperly limit the scope of an entirely separate claim limitation in the claim.

Ofiyaa takes an equally problematic approach to the terms "for engagement," "engaged with," and "in sliding engagement." As an initial matter, Ofiyaa asserts that all three terms must be defined using the same language across both patents, despite that the fact that the '757 Patent and the '762 Patent are unrelated, stem from different applications by different patentees and have different authors. "For engagement" is used in a dependent claim in the '757 Patent to describe the connection between a bracket and a screen, while "engaged with" and "in sliding engagement" are used in independent and dependent claims in the unrelated '762 Patent to describe how pairs of rails or housing components are connected and slide relative to one another. Once again, Ofiyaa attempts to improperly limit these terms to preferred embodiments, and for at least one of the terms – "engaged with" – Ofiyaa's proposed construction that the term must mean "interlocked or meshed with" is directly undermined by the use of this term in the claims.

Ofiyaa's approach to the terms "bracket" and "coupled to" is so flawed that their proposed constructions do not even find support in the preferred embodiments, much less the plain language

of the claims. Ofiyaa suggests defining "bracket" as "a structure in the shape of an L," even though the brackets shown in the preferred embodiments in the specification are not L-shaped. Similarly, there is no support for limiting the term "coupled" to a direct connection where the preferred embodiments in the specification do not even require a direct connection.

The technology of the Patents-in-Suit is not complex, and a person of ordinary skill in the art, not to mention a lay person, would easily understand the plain meaning of most, if not all, of the disputed claim terms. Accordingly, Xebec respectfully requests that the Court adopt its proposed constructions, which reflect the plain meaning of the terms and are fully supported by the intrinsic record of the Patents-in-Suit.

## II.    BACKGROUND

### A.    '757 Patent

The invention of U.S. Patent No. 9,395,757 ("the '757 Patent") generally relates "to a support system for mounting an auxiliary screen to a computing device, such as a portable computing device." (Ex. 1, 1:12-15). According to the Background, "[i]n the field of computing there exists a general desire for the provision of an auxiliary screen to supplement the functionality of a primary screen of a computing device," and "the provision of an auxiliary screen facilitates the performance of a plurality of simultaneous tasks…by allowing different information…to be concurrently displayed on each of the primary and auxiliary screens." (Ex. 1, 19-26).

While conventional desktop computers have been provided with secondary monitors or auxiliary screens, the Background further states that "such monitors typically comprise large, freestanding structures, which are unwieldy to transport," "require a desk or table of sufficient size for use," and are "clearly unsuitable for use in conjunction with portable computing devices, which are intended to be used in a more ad-hoc manner."  In view of one or more of these problems, it is an object of the invention of the '757 Patent to provide:

> An auxiliary screen support system for a computing device [that] has mounting
> members arranged to be disposed on opposing lateral sides of a primary screen of
> the computing device in use. A retaining member extends between the mounting

members, and is configured to hold the mounting members relative to opposing lateral sides of the primary screen. At least one mounting member is configured to bear an auxiliary screen such that the auxiliary screen is hung relative to the primary screen in use

(Ex. 1, Abstract; *see also* 1:51-57 (Summary of Invention)). A representative claim, Claim 1, is set forth below for ease of reference:

> **1**. An auxiliary screen support system for a computing device, the support system comprising:
> a plurality of mounting members arranged to be disposed on opposing lateral sides of the computing device in use; and
> a retaining member, wherein:
>   the retaining member extends between the plurality of mounting members, and is configured to hold the plurality of mounting members relative to the opposing lateral sides of the computing device,
>   at least one mounting member is configured to bear an auxiliary screen such that the auxiliary screen is hung relative to the computing device in use, and
>   the retaining member is length adjustable to hold the plurality of mounting members relative to the opposing lateral sides of the portable computing device by resisting separation thereof.

Xebec presently asserts that Ofiyaa infringes nine claims of the '757 Patent – Claims 1, 2, 3, 4, 5, 6, 10, 11, and 15. The parties dispute the constructions of 3 terms of the '757 Patent. The disputed terms, as well as the parties' proposed constructions, are set forth in the Disputed Claim Terms chart on Page iv, *supra*.

## B.   '762 Patent

The invention of U.S. Patent No. 10,809,762 ("the '762 Patent") generally relates to "an accessory display device for a computer," such as a laptop computer. (Ex. 2, 1:20). According to the Background, "[l]aptop computers have been a huge benefit for people who like to have the ability of a personal computer wherever they are….[w]hether it be for work, study, or entertainment." (Ex. 2, 1:5-7). "However, the tradeoff for laptop computers portability has always been the size of the display screen. The bigger the display, the bigger the laptop computer and the less portable it becomes." (Ex. 2, 1: 9-12).

3

The '762 Patent states that "there is a need for a device which allows for a laptop computer display to be expanded," and that "may be added onto the laptop computer easily and is also compact and portable." (Ex. 2, 1:12-16). In particular, the accessory display device of the '762 Patent generally includes:

> a housing having a first side and a second side movable relative to one another and a first pair of rails coupled to the first side and a second pair of rails coupled to the second side, the first pair of rails engaged with and slidable relative to the second pair of rails. The device also includes a tensioning member coupled to the first side and the second side and placing tension between the first side and second side. Further, the device includes a first engagement portion coupled to the first side and a second engagement portion coupled to the second side. The first engagement portion and the second engagement portion are configured to engage the side of a computer's display under force created by the tensioning member. Further still, a first display is slidable within the housing and is movable from a stowed position to a use position.

(Ex. 2, Abstract). A representative claim, Claim 1, is set forth below:

> 1. An accessory display device for a display device, comprising:
>   a housing having a first side and a second side movable relative to one another;
>   a first pair of rails coupled to the first side and a second pair of rails coupled to the second side, the first pair of rails engaged with and slidable relative to the second pair of rails;
>   a tensioning member coupled to the first side and the second side and placing tension between the first side and second side;
>   a first engagement portion coupled to the first side and a second engagement portion coupled to the second side, the first engagement portion and the second engagement portion configured to engage the side of a display device under force created by the tensioning member; and
>   a first, display slidable within the housing and movable from a stowed position to a use position.

Xebec presently asserts that Ofiyaa infringes eight claims of the '762 Patent – Claims 1, 2, 4, 8, 9, 10, 12, and 15. The parties dispute the constructions of 3 terms of the '762 Patent. The disputed terms, as well as the parties' proposed constructions, are set forth in the Disputed Claim Terms chart on Page iv, *supra*.

4

### C.      Person of Ordinary Skill in the Art

The non-exhaustive list of factors that may guide the fact finder in determining the appropriate level of skill in the art include: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (quoting *Envtl. Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983).

While it is unclear whether Ofiyaa has considered any of these factors, the parties do not, for the purposes of claim construction, appear to have a material dispute about the level of ordinary skill in the art. Specifically, Xebec contends that a POSITA in the field of auxiliary or accessory display mounting systems for computing devices would have at least (1) a bachelor's degree in mechanical engineering, industrial design, or related field or the equivalent; or (2) at least two years of experience designing computer products, computer accessories, or the equivalent.

## III.   ARGUMENT

### A.      The Disputed Terms of the '757 Patent
#### 1.    "hung"

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|
| "hung" | "fastened from above with no support from below; suspended" | Plain and ordinary meaning. |

The term "hung" should be given its plain and ordinary meaning to a POSITA in the context of the '757 Patent. The term is used in Claim 1 as a positional term to indicate that when the auxiliary screen is held by the mounting member, "the auxiliary screen is hung relative to the computing device." A POSITA, not to mention a lay juror, would readily understand the meaning of this term in the context of the claim, and construction of this term is unnecessary.

Ofiyaa's proposed construction – which includes two separate dictionary definitions of different scope – attempts to impose an additional, structural limitation into the claim that is unsupported by both the claim language and the specification. As it concedes in its briefing, Ofiyaa is attempting to limit the scope of this term – and the claim in which it appears – to the one

embodiment shown in Figure 8 of the '757 Patent where only one mounting member is used to bear or hold the auxiliary screen near the top of the primary screen. (*See* Doc. 26, p. 7) (asserting that "[t]he claim language tracks the embodiment in Figure 8…"). This is improper. *See, e.g., Philips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope…"); *C&M Oilfield Rentals, LLC v. Apollo Lighting Sols. Inc.*, No. 6:21-CV-00544-ADA, 2022 U.S. Dist. LEXIS 65180, *6 (W.D. Tex. Apr. 7, 2022) (Albright, J.) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.")

In violating this well-established canon of claim construction, Ofiyaa ignores both the claim language in which this term is used and the surrounding limitations of the claim. The term "hung" appears in the following limitation of Claim 1 of the '757 Patent:

> at least one mounting member is configured to bear an auxiliary screen **such that the auxiliary screen is hung relative to the computing device in use.**

(Ex. 1, 10:20-22) (emphasis added). All that is required by this limitation is at least one mounting member that is configured to bear an auxiliary screen that, when in use, is hung relative to the computing device in use. (*See id.*, 10:9-26). The claim is not limited to a structure where the mounting member holds the auxiliary screen from above, or where the mounting member is located at the top of the primary screen and the auxiliary screen, as Ofiyaa suggests in its briefing. Rather, the surrounding language of Claim 1 states that:

> **a plurality of mounting members** arranged to be disposed **on opposing lateral sides** of the computing device [*i.e.*, primary screen] in use.

(*Id.*, 10:12-14) (emphasis added). The claim language is much broader, as the mounting members (given the reference to a "plurality," there could be more than one on each side), which bear the auxiliary screen, may be positioned anywhere along the lateral sides of the primary screen.

As such, the claim language is broad enough to cover embodiments that would include more than one mounting member positioned anywhere along the "lateral sides" of the primary screen, not just at the top as shown in the embodiment in Figure 8. For example, if two mounting members per lateral side were used – one located at the top corner and another at the bottom corner of the primary screen – the mounting member at the bottom corner would support the auxiliary screen from below. This structure is plainly within the scope of the claim language and highlights the problematic nature of Ofiyaa's proposed construction.

From a practical standpoint, this is an easy concept for the jury to understand, as most people are familiar with how household doors are "hung" from hinges on a door frame, as depicted to the right. The hinges are set to the side of the door at varying heights. Because part of the door is above one or more of the hinges, the hinges provide support from below.

The specification likewise supports a much broader interpretation of this term (and the claim as a whole) than Ofiyaa suggests in its briefing. Ofiyaa, again, would have the Court focus solely on the one embodiment shown in Figure 8 (and the mounting engagement illustrated in more detail in Figure 3). (*See* Doc. 26, pp. 7-9). However, the specification, like the claim language, repeatedly states that "[t]he plurality of mounting members may be arranged to be disposed on opposing lateral sides or edges of the electronic device (e.g., the primary screen) when in use." (Ex. 1, 1:65-67; *see also* 2:1-3 ("The retaining member may be configured to hold the plurality of mounting members relative to the opposing lateral sides of the portable computing device."); 3:30-33 ("the plurality of mounting members may be used to mount a plurality of auxiliary screens, e.g. on opposing sides of the a primary screen"). In fact, the specification expressly states that "the opposing sides of the computing device against which the mounting members are located *may be*

*opposing intermediate edges* of the computing device," (*id.*, 3:38-40) (emphasis added). If the mounting members are located at the intermediate or middle edge of the sides of the primary screen, then at least a portion (if not half) of the auxiliary screen would be located above the mounting member and would be supported from below, not solely from above.

Even in the embodiment of Figures 8 and 3, the auxiliary screen is not fastened to the mounting member from above with no support below. Instead, in this embodiment, the projection (42) of the auxiliary screen sits within a recess/slot (26) of the mounting member (12) and is supported from below by the mounting member (12). The second portion (18) of the mounting member would also provide support to at least a portion of the auxiliary screen from below.

Notably, Ofiyaa concedes that "[t]he term 'hung' is not explicitly defined in the specification," which strongly counsels against any disclaimer or other scope constraint wherein this term is used to solely "fasten[] from above with no support from below." Even the out-of-context passages from the specification that Ofiyaa cites relating to the support system being configured to hang on the primary screen (rather than the mounting member configured to bear an auxiliary screen such that the auxiliary screen is "hung" relative to the computing device) state that it is "*at least partly* under the action of gravity," suggesting that there is support from below.

Almost as an afterthought, Ofiyaa, asserts that "any construction or interpretation [sic] 'hung' which permits fixedly connected is at plain odds with the stated objective of the '757 Patent." (Doc. 26, p. 10). This assertion is apparently based on a statement in the Background of the '757 Patent which distinguishes the '757 Patent from two prior art references. (*See* Ex. 1, 1:37-44). The prior art references teach "complex clamping mechanisms which are relatively expensive, as well as being time consuming to attach." (*Id.*). Here, Ofiyaa yet again conflates the mechanism for mounting the mounting member on the primary screen with the mounting of the auxiliary screen on the mounting members. By conflating the two, Ofiyaa arrives at the incorrect conclusion that the term "hung" must also imply a fastening that is easily attached and removed, not "fixedly connected." (Doc. 26, p. 10). Even assuming this additional limitation is encompassed in its proposed construction (which it is not), this argument is flawed, unsupported, and unpersuasive.

Ofiyaa's attempt to impose an additional, structural limitation into this claim that the auxiliary screen must be "fastened from above with no support from below" is a transparent attempt to avoid infringement and finds no support in the claim language or the specification of the '757 Patent. Ofiyaa's proposed construction should be rejected by the Court, and the Court should adopt the plain meaning of this term.

### 2.  "a bracket"

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|------------|-------------------------------|-------------------------------|
| "a bracket" | "a structure in the shape of an L adapted to support a load" | Plain and ordinary meaning. |

The term "a bracket" should be given its plain and ordinary meaning to a POSITA in the context of the '757 Patent. This term is used in Claim 4 to describe an additional limitation to a mounting member of Claim 1, in which the mounting member(s) have a first portion for engaging the portable computing device and a second portion (depending from the first portion) for bearing the auxiliary screen. Because a POSITA would have no difficulty understanding the meaning of this term in the context of the claim and the specification, no construction is needed.

Ofiyaa's proposed construction for "a bracket" is another brazen attempt to improperly limit the scope of the claim term to a particular embodiment of the '757 Patent. Ofiyaa even repeats the refrain that "[t]he claim language tracks the embodiment of Figure 3." (Doc. 26, p. 11). As discussed in Section III.A.1, *supra*, Ofiyaa's attempt to confine the claims to any particular embodiment is wholly improper. *See Philips*, 415 F.3d at 1323; *Liebel-Flarsheim*, 358 F.3d at 906.

The language of Claim 4 in the '757 Patent describes the system according to Claim 1,

> wherein one or both mounting members ***take the form of a bracket*** having a first portion for engagement with the portable computing device and a second portion depending from the first portion for bearing the auxiliary screen.

(Ex. 1, 10:35-39) (emphasis added). The plain language of the claim does not require any particular shape, only that the mounting member have a first portion for engagement with the portable computing device and a second portion depending from the first portion for bearing the auxiliary

screen. There is nothing else in the claim dictating or even suggesting any particular shape of mounting member in the form of a bracket.

Ignoring the claim language, Ofiyaa asserts that the term "a bracket" should be construed as "a structure in the shape of an L adapted to support a load." (Doc. 26, p. 10). Putting aside the ambiguity of what exactly Ofiyaa contends is L-shaped, the claim language is unmistakably broad enough to encompass any shape of mounting member that takes the form of a bracket. For example, the first and second portions of the mounting member can be linearly arranged such that they lie within a single plane. Alternatively, per language of the claim, the first and second portions of the mounting member can be arranged to form any of a broad range of angles, not limited to a 90-degree angle. This language is easily understood by a POSITA or a lay person.

The dependent claim language also lends helpful context for this term. *See, e.g. Modern Font Applications LLC v. Red Lobster Hospitality LLC*, No. 6:21cv470-ADA, 2022 U.S. Dist. LEXIS 38316, at \*7 (W.D. Tex. Mar. 4, 2022) ("Other asserted or unasserted claims can also aid in determining the claim's meaning….") (citing *Phillips*, 415 F.3d at 1314). Claim 10 of the '757 Patent, which depends from Claim 4, adds the limitation, "wherein the second portion takes the form of an ear-like formation[.]" (Ex. 1, 10:58-60). Because an "ear-like formation" is necessarily a three-dimensional structure, and an "L" is a two-dimensional form, it is impossible for the bracket to be L-shaped *and* have a portion that is a three-dimensional ear-like formation. Ofiyaa's proposed construction would therefore fly in the face of the doctrine of claim differentiation.

Ofiyaa also ignores the teachings of the '757 Patent's specification. Indeed, Ofiyaa's proposed construction is inappropriately narrow, to the exclusion of even the very embodiment it purports to track. A construction that excludes embodiments is rarely, if ever, correct. *Optis Wireless Tech., LLC v. Huawei Device Co.*, No. 2:17-cv-123-JRG-RSP, 2018 U.S. Dist. LEXIS 7711, \*35 (E.D. Tex. Jan. 18, 2018) (citing *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) (reversible error where court adopts construction that excludes preferred embodiment); *Kaneka v. Xiamen Kingdomway Group*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) ("A

construction the excludes all disclosed embodiments… is especially disfavored."). Here, the specification teaches:

> The plurality of mounting members may have the form of **brackets**. The **brackets may comprise first and second portions**. **The first and second portions may be angled, e.g. obliquely angled, relative to one another. The angle between the first and second portions may be in the range of 120-180 degrees**.

(Ex. A, 2:12-17) (emphasis added). The obtuse angle taught in the specification is wholly at odds with Ofiyaa's proposed construction, which portrays the bracket structure as specifically "in the shape of an L," *i.e.*, at a 90-degree angle.

The embodiment depicted in Figures 3 and 5, which Ofiyaa touts as "bring[ing] the first (16) and second (18) portions of the L-shaped bracket (12) to life" is in stark contrast to, and effectively read out by, Ofiyaa's proposed construction. (*See* Doc. 26, p. 12). As shown in Figures 2 and 5 below, the first portion (16) and second portion (18) do not form an L shape, but rather, meet at an angle in the range of 140 to 160 degrees, consistent with the specification.



To the extent that Ofiyaa contends that Reference Numbers 18 and 30 in Figure 5 are the "bracket" having an L shape, this too is refuted by the specification, which contemplates that the mounting member further comprises a third portion (17) and a fourth portion (19), having an outer surface (30). (*See* Fig. 2 above; Ex. 1, 5:49-50; 6:62). The claim language contemplates a first and second portion forming the "bracket," not the second and fourth portion. Ofiyaa's proposed construction, to the exclusion of all disclosed embodiments, is contrary to the teachings of the claims and the specification of the '757 Patent.

11

In fact, despite touting its proposed construction as consistent with an ordinary and customary meaning of the term "bracket," Ofiyaa clearly crafted its construction from a dictionary definition completely distinct from the context of the '757 Patent. (*See* Ex. 3, LAIBO-00411 (defining "bracket" as "a simple rigid structure in the shape of an L, one arm of which is fixed to a vertical surface, the other projecting horizontally to support a shelf or other weight")). Ofiyaa thus plucked the "shape of an L" language from a dictionary definition that is specific to a structure for supporting a wall-mounted shelf. This kind of overreliance on dictionaries is highly disfavored because it results in "the adoption of a dictionary definition entirely divorced from the context of the written description." *See UV Partners, Inc. v. Proximity Sys.*, No. 20-cv-4120, 2022 U.S. Dist. LEXIS 124607 (S.D. Tex. July 14, 2022) (citing *Phillips*, 415 F.3d at 1320-21; *see also Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, n. 6 (Fed. Cir. 1996) (improper to rely on dictionary definition that contradicts definition ascertained by reading of the patent documents). Ofiyaa's proposed construction, solely derived from unpersuasive extrinsic evidence, is another attempt by Ofiyaa to impose an additional, structural limitation that has no support in the claim language or the specification. Thus, the Court should assign the term "bracket" its plain and ordinary meaning.

### 3.  "for engagement"

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|
| "for engagement" | "for interlocking or meshing under the action of friction and/or gravity in use" | Plain and ordinary meaning, or "for connection" |

The term "for engagement" should be given its plain and ordinary meaning to a POSITA in the context of the '757 Patent. The term means that, when the mounting members take the form of a bracket in Claim 4, they have a first portion "for engagement" with the portable computing device (*i.e.*, primary screen). In other words, the bracket simply has a first portion "for connection" with the primary screen to hold the mounting member in place. Xebec's proposed construction represents the plain meaning of this term and is fully supported by the intrinsic record.

Ofiyaa's proposed construction, on the other hand, is purposefully narrow, as it would impose the additional structural requirements for "interlocking" (*e.g.*, overlapping or fitting

together of projections and recesses) or "meshing" (*e.g.*, the teeth of a gearwheel, locking together, entangled or intertwined) into Claim 4, as well the further requirement that such "interlocking" or "meshing" take place "under the action of friction and/or gravity in use." There is no support in the intrinsic record for imposing all these additional requirements into the language of Claim 4.

Ofiyaa, once again, wholly ignores the claim language in advancing its proposed construction. The term "for engagement" is used in Claim 4 as follows:

> The system according to claim 1 wherein ***one or both mounting members take the form of a bracket having a first portion for engagement with the portable computing device*** and a second portion depending from the first portion for bearing the auxiliary screen.

(Ex. 1, 10:35-39) (emphasis added). Nothing in the claim language requires (or even suggests) that the first portion of the mounting members "interlock" or "mesh" "under the action of friction and/or gravity in use." Rather, the claim language merely requires that the mounting members have a first portion "for engagement" or "for connection" with the portable computing device. Nothing more is required by the claim.

The surrounding claim language further counsels against imposing these additional requirements into the language of Claim 4. Specifically, while Claim 4 broadly defines that the "mounting members take the form of a bracket having a first portion for engagement with the portable computing device," dependent Claims 5 through 8 more specifically define the structure of the bracket (*see* Claim 5 ("the bracket comprises a unitary body of material shaped to define the first and second portions")) and the first portion of the bracket for individual types of connection. (*See* Claim 6 ("the first portion is shaped to define a partial enclosure which is enclosed on three sides thereof"); Claim 8 ("wherein a front wall and a rear wall comprises a plurality of engagement formation on its internal side so as to define a series of channels offering differing fitment depths")). While these additional dependent claims define more specific structures or shapes for the first portion of the bracket of Claim 4 that could arguably "interlock" with the primary screen, the language in Claim 4 is broader and not limited to such structures or shapes.

13

Ofiyaa inexplicably asserts in its briefing that the "specification makes clear that although the mounting system is attached to the primary screen 62, *this is not engagement*." (Doc. 26, p. 14) (emphasis added). This is nonsensical and directly contradicts the claim language which, as discussed above, states the exact opposite – namely, the "mounting members take the form of a bracket having a first portion for engagement with the portable computing device [*i.e.*, the primary screen]." (Ex. 1, 10:35-39). Ofiyaa has completely ignored the claim language and, in doing so, reveals a fundamental misunderstanding of how this term is used in Claim 4.

Ofiyaa's reliance on the specification is equally flawed. Except for its reference to an "engagement formation," (Doc. 26, p. 13), Ofiyaa cites portions of the specification (both text and figures) that discuss *entirely different components of the invention*, not the mounting members "for engagement" with the primary screen. (*See, e.g.*, Doc. 26, p. 13, last paragraph (discussing the connection between the auxiliary screen and mounting member); p. 14 (referencing Figures 4 and 7 showing connection between projections (42) on auxiliary screen housing the receiving formation (26) on the mounting member)). While an argument could be made that the projections (42) of the preferred embodiment of the auxiliary screen shown in Figures 4 and 7 "interlock" with the receiving formation (26) of the mounting member, this is a different structure than found in the relevant limitation of Claim 4.

The portions of the specification related to the relevant limitation of Claim 4 – namely, the "engagement" or "connection" between the first portion of the brackets and the portable computing device [*i.e.*, the primary screen] – are consistent with the claim language. The specification broadly teaches that "[a]n internal surface of the first portion may be shaped to engage with a primary screen of the portable computing device, for example at its edge or corner." (Ex. 1, 2:46-48). Once again, while the specification describes more specific structures or shapes for the "first portion," such as "a partial enclosure," "a groove, channel or striation," "a series of steps," or "a wing or ear-like formation," there is no basis to read these more specific structures or shapes into the broader language of Claim 4, especially, where, as discussed above, a series of dependent claims further define the structure and shape of the first portion of the bracket.

Accordingly, the term "for engagement" should be given its plain and ordinary meaning, which means "for connection."

**B.    The Disputed Terms of the '762 Patent**
**1.   "engaged with and slidable" and "in sliding engagement"**

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|--------|-----------|-------------------------------|------------------------------|
| '762 | "engaged with and slidable" | "interlocked or meshed with and capable of sliding" | "connected and slidable" |
| '762 | "in sliding engagement" | interlocked or meshed with and capable of sliding | "in a sliding connection with" |

Ofiyaa proposes that the two terms "engaged with and slidable" and "in sliding engagement" be construed together. Xebec does not agree that the meanings of each of these terms, taken as a whole, are coextensive. "Engaged with and slidable" is used in Claim 1 of the '762 Patent to describe the relationship between a first and second pair of rails, whereas "in sliding engagement" is used in Claim 9 to describe the relationship between the first side and second side of the housing. These terms are not the same, nor are they used in the same context.

Currently, the parties' disagreement does not appear to involve the meaning of the terms "slidable" or "sliding." Rather, the dispute centers on whether the terms "engaged with" and "engagement" should mean "connected" and "in a connection," or whether these terms should be construed to require a more specific type of connection that requires components of the invention to be "interlocked or meshed with." Because the terms "engaged with" and "engagement" are used consistently in the '762 Patent to describe components that are "connected" or "in a connection," the Court should adopt Xebec's proposed construction.

As an initial matter, Ofiyaa's assertion that Xebec is somehow construing terms inconsistently between the '757 and '762 Patent is baseless. Putting aside the fact that the various "engaged" or "engagement" terms are used in legally unrelated patents, to define unrelated structural components of the respective inventions, Xebec believes these terms should consistently be construed to mean "connected" or "in a connection," as this represents the plain and ordinary meaning of these terms.

Turning first to the claim language, the term "engaged with" is used in Claim 1 of the '762 Patent as follows:

> a first pair of rails coupled to the first side and second pair of rails couple to the second side, ***the first pair of rails engaged with and slidable relative to the second pair of rails***

(Ex. 2, 5:20-23) (emphasis added). There is nothing in the claim language that requires that the first pair of rails "interlock" or "mesh" with the second pair of rails. Instead, the claim language only requires that the first pair of rails be connected with and slidable relative to the second pair of rails. Nothing more is required by the plain language of the claim.

True to form, Ofiyaa asserts that support for its "interlocked and meshed with" language finds support in one embodiment in the specification, which depicts male rails and female rails that do arguably "interlock" or "mesh" with each other. (*See* Doc. 26, p. 16 (citing to the embodiment shown in Figure 8 and discussed in the specification at 3:45-61)). As set forth in Section III.A.1, any attempt to limit the scope of Claim 1 to the specific embodiment shown in Figure 8 and discussed in that section of the specification is improper. *See, e.g., Philips*, 415 F.3d at 1323; *Liebel-Flarsheim*, 358 F.3d at 906 (Fed. Cir. 2004). Thus, Ofiyaa's deliberate attempt to limit the scope of Claim 1 to one embodiment in the specification should be rejected by the Court.

The surrounding claim language of the '762 further demonstrates that the breadth of the connection between the first pair of rails and second pair of rails in Claim 1 is much broader than this specific embodiment. Indeed, while Claim 1 states that "the first pair of rails engaged with and slidable relative to the second pair of rails," Claim 5 further defines the first pair of rails as having a male and female rail: "wherein at least one of the first pair of rails is a female rail and the other of the first pair of rails is a male rail." (Ex. 2, 5:44-46). Similarly, Claim 6 further defines both the first and second pair of rails as having female and male rails that engage one another:

> wherein at least one of the first pair of rails is a female rail and the other of the first pair of rails is a male rail and at least one of the second pair of rails is a male rail and the other of the second pair of rails is a female rail...

(*Id.*, 5:47-54). Thus, the connection between the first pair of rails and second pair of rails in Claim 1 cannot be limited to the "interlocking" or "meshing" structure shown in Figure 8, as Ofiyaa suggests, because it would render the additional limitations of Claims 5 and 6 superfluous and meaningless, which is improper. *See, e.g., Merck & Co.*, 395 F.3d at 1372 (Fed. Cir. 2005) ("[a] claim construction that gives meaning to all of the terms of the claim is preferred over one that does not do so.").

Moreover, the language of Claim 9 further demonstrates that the term "engaged with," as used in the '762 Patent, is not limited to components that are "interlocked" or "meshed." Claim 9 uses the term "engaged with" to describe the connection between the housing and the computer display: "to further keep the housing *engaged with* the computer's display." (Ex. 2, 6:10-11). In doing so, the claim states that the "housing" has a separate "a first engagement portion coupled to the first side and a second engagement portion couple to the second side" that are "configured to engage at least a portion of the side of a computer's display." (*Id.*, 6:4-8). Because the first and second engagement portions are separate or intermediate structures between the housing and the computer display, the term "engaged with" cannot be limited to "interlocked" or "meshed." Rather, consistent with the usage of this term in Claim 9, "engaged with" in the context of the '762 Patent more generally means "connected." Under somewhat similar facts where a separate or intermediate structure was present in a rotary cutter deck, the Federal Circuit held that the phrase "engagement with" does not necessitate direct contact and that "construing 'engagement' to include indirect contact [is] consistent with its plain meaning." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) ("The term "engagement" connotes a connection between two objects in which the motion of one object is constrained by the other. This connection can be indirect, such as where a motor is engaged with a gear through a second, intermediate gear.").

The terms "engaged with" and "engage" are used elsewhere in the specification in the same context as in Claim 9, namely, the first and second engagement portion "configured to engage at least a portion of the side of computer's display under force," to "keep the housing engaged with the computer's display," and to allow the screen to "engage with the lid of the computer display

accessory." (*Id*., 1:30-33; 1:45-49; 2:53-54). In that embodiment, as depicted in Figures 3 and 8 (showing only one side (175)), the left and right portions (170 and 175) of the housing "engage" the side of a computer's display/lid under force. (*Id*., 2:52-54). The left and right portions of the housing are biased toward each other by the tensioning member, "effectively clamping" to either side of the computer lid. (*Id*., 2:55-59). The type of "clamping" or interference/friction fit connection described in the specification does not rely on any interlocking or meshing parts.

As a final point, even the section of the specification that Ofiyaa cites in a deliberate attempt to limit this term to one embodiment supports a broader construction of this term. Indeed, immediately following the block quote that Ofiyaa includes on Page 16 of its brief is the following statement: "The rail to rail engagement depicted *is one example of an arrangement* to enable expandability of housing 130 however *any of a variety of other ways may be used without departing from the scope of the invention.*" (Ex. 2, 3:57-61) (emphasis added). This statement, which Ofiyaa omits from its brief, resolves any doubt the scope of the term "engaged with" should not be limited to structure shown in Figure 8.

Ofiyaa is attempting to read a limitation from the specification into terms "engaged with" and "in sliding engagement" to require a more specific type of connection that is only "interlocked" or "meshed." This is improper and should be rejected by the Court. The Court should construe these terms in accordance with their plain meaning in the '762 Patent, which means "connected" or "in connection with."

### 2. "coupled to"

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|--------|-----------|-------------------------------|-------------------------------|
| '762 | "coupled to" | "directly connected to" | Plain and ordinary meaning |

The term "coupled to" should be given its plain and ordinary meaning to a POSITA in the context of the '757 Patent. This term is used in claims 1 and 9 to describe the relationship between various components and the housing of the accessory display device: "a first pair of rails **coupled to** the first side and a second pair of rails **coupled to** the second side;" "a tensioning member

**coupled to** the first aside and the second side;" and "a first engagement portion **coupled to** the first side and a second engagement portion **coupled to** the second side[.]" The claims do use "coupled to" in any special or unusual manner and do not limit or disavow any claim scope.

Ofiyaa, once again, attempts to limit the language of the claims, this time by imposing a requirement that that "coupled to" be limited to only a direct connection. This is improper and has been routinely rejected by courts in the Fifth Circuit, as "Courts repeatedly construe[] 'coupled' to include indirect attachment." *C&M Oilfield Rentals,* 2022 U.S. Dist. LEXIS 65180 at *11 (citing *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1270-71 (Fed. Cir. 2010) (reversing district court's overly narrow construction of the term "coupled to" which required a direct connection); *Foundry Networks v. Lucent Techs., Inc.*, No. 2-04-CV-40 (TJW), 2005 U.S. Dist. LEXIS 46840, *7 (E.D. Tex. May 24, 2005) ("This court has consistently construed the term 'coupled' to mean 'directly or indirectly connected.'"); *Intergraph Corp. v. Intel Corp.*, No. 2:01-CV-160 (TJW), 2002 U.S. Dist. LEXIS 27117, *13 (E.D. Tex. June 3, 2002) ("The Court construes 'coupled' as connected, directly or indirectly."); *Douglas Dynamics.*, 717 F.3d at 1342 ("connected to" includes indirect linkages, noting that the specification uses variations of the term "connect" to describe indirect connections). As such, this claim term should include both direct and indirect connections as is normally afforded the term.

Even the portions of the specification that Ofiyaa proffers in support of its proposed construction contemplate an indirect connection. For example, the various types of coupling for the tensioning members to the housing portions specifically include "clipping." (*See* Ex. 1., 3:4-7; Doc. 26, p. 18). A clip is exactly the type of indirect connection included in the term "coupled." The specification goes on to describe different embodiment with another example of an indirect connection between the tensioning member (here, an elastic band (140)) and the housing: "[T]he band 140 may be threaded into a cutout on each portion of the housing 130. Once threaded through the cutout, a blocking piece which does not fit through the cutout is affixed to the band so that the band does not slip back through the cutout[.]" (Ex. 1, 3:8-12). The "blocking piece" is again an intermediate structure indirectly connecting one component to the housing. The specification then

19

proceeds to dispense of any remaining uncertainty: "Any of a variety of ways may be used to attach the tensioning member to the two housing portions without departing from the scope of the invention." *Id*., 3:12-15.

Ofiyaa asserts that the '757 Patent interchangeably uses the terms "affixed" and "attach" in lieu of "coupled to." (Doc. 26, p. 19). However, Ofiyaa relies on a portion of the specification describing the housing being affixed to a portable computing device, not to any of the three components for which the term is used in the claim (*i.e.*, the first and second pairs of rails, the tensioning member, and the first and second engagement portions). Moreover, even if Ofiyaa's assertion that "affixed," "attached," and "coupled to" are equivalents were true, Ofiyaa provides no support for its assertion that the terms "affixed" and "attached" require only a direct connection. In fact, courts in this Circuit have found that "attached," like "coupled," does not itself imply direct connection. *See Dogleg Right Partners, LP. v. Taylor Made Golf Co.*, No. 2:07-CV-533-TJW-CE, 2011 U.S. Dist. LEXIS 29474, *39 (E.D. Tex. Mar. 22, 2011).

Ofiyaa's also asserts that the specification's description of an embodiments of the accessory device coupled to the display device in a "secure" manner necessitates a direct connection. (Doc. 26, p. 19). Ofiyaa, once more, is applying the term outside of the context of the "coupled" components of the claims. This argument is nonsensical and unsupported. A POSITA would understand the customary meaning of this term to encompass both direct and indirect connections and nothing in the intrinsic record supports otherwise limiting the same as asserted by Ofiyaa.  As such, the Court should afford this term its plain and ordinary meaning.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, Xebec respectfully requests that the Court adopt its proposed constructions for the claim terms in dispute.

Dated: October 19, 2022

_/s/ Scott P. Amy_

Scott P. Amy
Georgia Bar No. 141416
s.amy@thip.law
Joseph W. Staley
Georgia Bar No.
j.staley@thip.law
Andrea P. Nguyen
Georgia Bar No. 306931
a.nguyen@thip.law
**THOMAS HORSTEMEYER, LLP**
3200 WINDY HILL RD SE
SUITE 1600E
ATLANTA, GEORGIA 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendant/Counterclaim Plaintiff Xebec, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 19, 2022, the foregoing XEBEC, INC.'S RESPONSIVE

CLAIM CONSTRUCTION BRIEF was filed using the Court's CM/ECF system, which will

automatically send electronic notice of such filing to all attorneys of record in this case.


*/s/ Scott P. Amy*
Scott P. Amy