**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SHENZHEN LAIBO TECHNOLOGY CO., LTD.; LIVING SKYLIGHT INC.; BOHUA HUAGAOLI ELECTRONICS TECHNOLOGY CO., LTD.; YAN'AN SHANGYE NETWORK TECHNOLOGY CO., LTD.; SHENZHEN HTPOW ELECTRONIC COMMERCE CO., LTD; SHENZHEN LIANSHENGTUO TECHNOLOGY CO., LTD.; SHENZHEN SHANGJIAMEIPIN E-COMMERCE CO., LTD.; AND SHENZHEN WEIDONGZHIXIN TECHNOLOGY CO., LTD., <br><br> Plaintiffs/Counterclaim Defendants, <br> v. <br><br> XEBEC, INC. <br><br> Defendant/Counterclaim Plaintiff. | Case No. 6:22-cv-00001-ADA |

**XEBEC, INC.'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I. ARGUMENT ...................................................................................................1
    A. The Disputed Terms of the '757 Patent ............................................1
        1. "hung" ....................................................................................1
        2. "a bracket" ............................................................................4
        3. "for engagement" .................................................................6
    B. The Disputed Terms of the '762 Patent ............................................9
        1. "engaged with and slidable" and "in sliding engagement"..9
        2. "coupled to" .......................................................................10
II. CONCLUSION............................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   632 F.3d 1246 (Fed. Cir. 2011) ............................................................................................... 5

*Fin Control Systems Pty., Ltd. v. OAM, Inc.*,
   265 F.3d 1311 (Fed. Cir. 2001) ............................................................................................... 7

*In re Varma*,
   816 F.3d 1352 (Fed. Cir. 2016) ............................................................................................... 7

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012) ............................................................................................... 2

*Leader Dev. Indus. Corp. v. Intercrown Enter.*,
   No. 2:18cv00254, 2019 U.S. Dist. LEXIS 125387 (E.D. Tex. July 29, 2019) ..................... 2, 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................................................. 2

*Philips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................... 1, 7, 9

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ............................................................................................ 1, 4

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................... 3

*Unwired Planet, LLC v. Apple, Inc.*,
   829 F.3d 1353 (Fed. Cir. 2016) ............................................................................................... 3

*Wang Labs, Inc. v. America Online, Inc.*,
   197 F.3d 1377, 53 U.S.P.Q.2D (BNA) 1161 (Fed. Cir. 1999) ................................................ 4

*Watts v. XL Sys., Inc.*,
   232 F.3d 877 (Fed. Cir. 2000) ................................................................................................. 4

## CLAIM TERMS IN DISPUTE

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|---|
| '757 | "hung" | "fastened from above with no support from below; suspended" | Plain and ordinary meaning |
| '757 | "a bracket" | "a structure in the shape of an L adapted to support a load" | Plain and ordinary meaning |
| '757 | "for engagement" | "for interlocking or meshing under the action of friction and/or gravity in use" | Plain and ordinary meaning or "for connection" |
| '762 | "engaged with and slidable" | "interlocked or meshed with and capable of sliding" | Plain and ordinary meaning or "connected and slidable" |
| '762 | "in sliding engagement" | "interlocked or meshed with and capable of sliding" | Plain and ordinary meaning or "in a sliding connection with" |
| '762 | "coupled to" | "directly connected to" | Plain and ordinary meaning |

I.   ARGUMENT

A.   The Disputed Terms of the '757 Patent

1.   "hung"

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|
| "hung" | "fastened from above with no support from below; suspended" | Plain and ordinary meaning. |

Ofiyaa's ongoing attempt to read an additional, structural limitation into Claim 1 that the auxiliary screen must be "fastened from above with no support from below" should be rejected by the Court. In its Reply, Ofiyaa suggests that the invention of Claim 1 should be limited to the embodiment shown in Figure 8 because the specification allegedly i) "does not disclose materially different embodiments of any auxiliary screen hung relative to a computing device" and ii) "uses language indicating an intention for the claims and the embodiment in the specification to be coextensive." (Doc. 32, p. 3). Ofiyaa's first argument violates a cardinal rule of patent law, and its second, newly concocted "limiting disclaimer" argument is unsupported by the '757 Patent.

Turning first to the claim language, the term "hung" is used in the following context in Claim 1: "at least one mounting member is configured to bear an auxiliary screen *such that the auxiliary screen is hung relative to the computing device in use.*" (Doc. 27-2, 10:20-22) (emphasis added). The plain and ordinary meaning of the term "hung" is easily understood, as it is used as a positional term that indicates that when the auxiliary screen is held by the mounting member, the auxiliary screen is "hung" relative to the computing device or primary screen. The claim is not limited to a structure where the mounting members only hold the auxiliary screen from above, or where the mounting members are located only at the top corner of the primary screen. Ofiyaa is attempting to construe this term to import one or more of the structural features shown in the example embodiment depicted in Figure 8 into the claim, which is improper. *See Philips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).

Ofiyaa's assertion that the patentee intended for the invention of Claim 1 and the embodiment in Figure 8 to be "coextensive" would violate the doctrine of claim differentiation. To support its "fastened from above with no support from below" definition, Ofiyaa asserts that "the patentee intended the invention to be limited to the particular auxiliary screen support mounting system structure explicitly disclosed [in Figure 8]," (*see* Doc. 32, p. 3), in which mounting members are positioned at the top corners of the primary screen. Claim 1, however, does not contain any positional requirement for the mounting members other than they be "disposed on opposing lateral sides of the computing device [*i.e.*, primary screen]." (Doc. 27-2, 10:12-14). Claim 2, which depends from Claim 1, further defines the position of the mounting members to require "at least one of the plurality of mounting members is configured to be located about a corner of the electronic device." (*Id.*, 10:27-29). Thus, if the patentee intended for Claim 1 to be limited to structure shown in Figure 8, the additional positional limitation of Claim 2 would be rendered superfluous.[1] *See, e.g., InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (stating the doctrine of claim differentiation is at its strongest "where the limitation that is sought to be read into an independent claim already appears in a dependent claim.") (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)).

Ofiyaa's assertion that the patentee's use of the phrase "according to the present invention" limits the scope of Claim 1 to the embodiment shown in Figure 8 is misplaced. (*See* Doc. 32, pp. 2-4). While the specification makes several references to "according to the present invention," "according to a first aspect of the present invention," and "according to an example of the present invention," none of these references rise to the level of a clear and unmistakable disclaimer. Instead, the language is used generally to describe only "embodiments" of the invention – *i.e.*, meaning only the described embodiment is within the scope of the claims. *See, e.g., Leader Dev. Indus. Corp. v. Intercrown Enter.*, No. 2:18cv00254, 2019 U.S. Dist. LEXIS 125387, at *12 (E.D.

---

[1] Other limitations in dependent claims, such as the limitation in Claim 11 that further defines how the auxiliary screen may be held by the mounting members, such as by "a recess or projection for engagement with a corresponding projection or recess on an auxiliary screen," would likewise be rendered superfluous if the patentee intended for Claim 1 to be limited to the structure shown in Figure 8. (*See* Doc. 27-2, 10:61-64).

Tex. July 29, 2019) (noting the important distinction of using "*in accordance* with the present invention" to state an embodiment is within the scope of the claims) (emphasis in original).

Specifically, none of the referenced uses of "according to the present invention," "according to a first aspect of the present invention," or "according to an example of the present invention" define "the invention" as being limited to a structure where the auxiliary screen is "fastened from above with no support from below." Rather, in each instance where these phrases are used, they describe only "embodiments" of the invention or are used in connection with general statements about "embodiments" of the invention. (*See, e.g.,* Doc. 27-2, 1:51-53 ("According to a first aspect of the present invention there is provided an auxiliary screen support system for a portable computing device…."); 4:11-13 ("According to a further aspect of the present invention, there is provided an auxiliary screen housing for use in conjunction with the auxiliary screen support system…."); 5:39-41 ("With reference to Fig. 1, there is shown an auxiliary screen mounting system, generally designated 10, according to the present invention."); 5:46-47 ("With reference to Figs. 2 to 5, there is shown a mounting member 12 according to an example of the present invention."); 7:28-30 ("With reference to Figs. 6 and 7, there is shown a screen housing, generally designated 40, according to the present invention."); 8:39-41 ("With reference to Fig. 8, there is shown an auxiliary screen mounting system 10 and screen housing 40 according to the present invention….")). The Federal Circuit has declined to find disavowal based on general descriptions of what constitutes "the present invention." *See, e.g., Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

Moreover, the specification demonstrates that the patentee did not clearly disclaim or disavow claim scope. As discussed in detail in Xebec's Response, the specification discloses alternative structures beyond what is shown in Figure 8. For example, instead of positioning the mounting members at the top corner of the primary screen, "the opposing sides of the computing device against which the mounting members are located may be opposing intermediate edges of the computing device." (Doc. 27-2, 3:38-40). In this alternative structure, at least a portion (if not

3

half) of the auxiliary screen would be located above the mounting member and would be supported from below, not solely from above. As another example, the auxiliary screen may be supported by an entirely separate component, such as cover. (*See id.*, 4:16-18 ("Alternatively, the screen housing may be a separate component which may be adapted to receive an auxiliary screen, for example as a removable cover.")). In this alternative structure where there is a separate screen housing, such as a cover, supporting the auxiliary screen, the auxiliary screen would likewise be supported from below, not solely from above.[2]

As a final point, Ofiyaa has conceded that the two separate definitions it has proposed have differing scope, which will be problematic if adopted. Specifically, Ofiyaa concedes, as it must, that Claim 1 is broad enough to encompass a structure where a mounting member could be located at an intermediate lateral edge and provide support from below. (*See* Doc. 32, p. 4 ("Defendant's argument that an intermediately located mount[sic] member would inherently have at least a portion of the auxiliary screen located above and supported from below wholly ignores the fact that part of Plaintiffs' proposed construction includes the word 'suspended,' ***which would be in accord with*** the briefly mentioned intermediately located mounted member.") (emphasis added). Thus, Ofiyaa's own alternative definition of "suspended" would permit support from below, rendering its primary definition of "fastened above with no support from below" untenable.

   2.  **"a bracket"**

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|
| "a bracket" | "a structure in the shape of an L adapted to support a load" | Plain and ordinary meaning. |

Ofiyaa, once again, relies on the same faulty argument that it did for the term "hung" – namely, that the patentee's use of the phrases "according to the present invention" or "according

---

[2] In contrast to the claims and the specification of the '757 Patent, in each of the cases cited by Ofiyaa there was a clear articulable intention to limit the scope of the claim. *See, e.g., SciMed Life Sys.*, 242 F.3d at 1341 (adopting narrow construction because the patentee touted and distinguished the advantages of one embodiment over the prior art and thereby "implicitly disclaim[] the subject matter that was excluded."); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882-883 (Fed. Cir. 2000) (affirming narrow construction of term "sealingly connected" because specification "actually limits the invention to [certain] structures" and because inventor specifically touted that construction over prior art during prosecution); *Wang Labs, Inc. v. America Online, Inc.*, 197 F.3d 1377, 53 U.S.P.Q.2D (BNA) 1161 (Fed. Cir. 1999) (affirming narrow construction of term "frame" where written description specifically defines term as limited).

to an example of the present invention" allegedly limits the "bracket" of Claim 4 to the embodiment shown in Figure 3. (*See* Doc. 32, p. 6). For the reasons discussed in Section I.A.1, *supra*, Ofiyaa's newly concocted "limited disclaimer" argument for this term is likewise incorrect, as none of the cited examples from the specification rise to the level of a clear and unmistakable disclaimer. Rather, the example of a "bracket" shown in Figure 3 is nothing more than a non-limiting embodiment that should not be imported into the scope of Claim 4.

In particular, the specification of the '757 Patent does not disclaim, much less clearly and unmistakably disclaim, other possible embodiments of a "bracket." The sentences cited by Ofiyaa do not rise to the level of a clear and unmistakable disclaimer at all, as they do not even mention the word "bracket" or any intention to limit a bracket to "a structure in the shape of an L adapted to support a load." (*See* Doc. 27-2, 5:20-21 ("Fig. 3 shows a three-dimensional front view of a mounting member according to the present invention."); *see also id.* 5:18-25). Rather, they merely state that the mounting member shown in Fig. 3 is an embodiment of the invention – *i.e.*, meaning only that the referenced embodiment is within the scope of the claims. *See, e.g., Intercrown Enter.*, 2019 U.S. Dist. LEXIS 125387 at *12. Beyond those sentences, Ofiyaa does not point to any specific language that includes "words or expressions of manifest exclusion or restriction," but merely relies on conclusory attorney argument. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011). As such, nothing in the specification defines the invention of Claim 4 as being limited to "a bracket" that is "a structure in the shape of an L."

In fact, Ofiyaa's assertion that the specification does not disclose materially different embodiments of mounting members in the form of a bracket is demonstrably incorrect. The specification states that "[t]he first and second portions [of the bracket] may be of fixed or adjustable relative angular orientation." (Doc. 27-2, 2:19-21). The specification further states "[a]dditionally or alternatively, the mounting member(s) may comprise a hinge for adjusting the angle of the auxiliary screen…." (*Id.*, 2:8-10). The specification further states that "[a]lternatively each of the plurality of mounting members may have a different form." (*Id.*, 3:33-34). Any of these

alternative examples are sufficient to establish that there is more than one embodiment contemplated by the patentee. (*Id.*, 3:33-34).

Ofiyaa's argument that a bracket cannot be linear is also demonstrably incorrect, as the specification explicitly states that "[t]he angle between the first and second portions may be in the range of 120-180 degrees." (Doc. 32, p. 7). A linear arrangement of the first and second portions would be 180 degrees and is thus *explicitly* contemplated by the written description of the '757 Patent. In fact, Ofiyaa highlights the ambiguity introduced by its proposed construction by backpedaling on the meaning of L-shaped. (*See* Doc. 32, p. 7 fn. 1). Despite its insistence on including "L-shaped" in its construction, Ofiyaa now asserts that this phrase does not mean a 90-degree angle, is not limited to a 2-dimensional structure, and should be interpreted to include an ear-like formation. There is no support in the intrinsic record for any of these assertions.

### 3. "for engagement"

| Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|
| "for engagement" | "for interlocking or meshing under the action of friction and/or gravity in use" | Plain and ordinary meaning, or "for connection" |

Ofiyaa's Opening Brief does not indicate that it only intended to construe the term "for engagement" in the context of Claim 11, but not "for engagement" in the context of Claim 4. (*See* Doc. 26, pp. 13-15). In fact, Ofiyaa's Opening Brief does not reference the claims or the claim language at all. But, the fact that Ofiyaa relied on examples from the specification that discuss the use of this term *in both contexts* – namely, the engagement between the mounting member and the portable computing device of Claim 4 and the engagement between the mounting member and the auxiliary screen of Claim 11 (*see id.*, p. 13)[3] – strongly suggests that it originally believed that this term should be given the same meaning throughout *all* of the claims of the '757 Patent.

---

[3] In its Opening Brief, Ofiyaa expressly stated that "the '757 Patent uses the term 'engagement' synonymously with 'engagement formation' (*e.g.*, 'such as a groove, channel or striation)" and "the '757 Patent provides an example such as '[t]he spine portion may be adapted to engage the vertices of a variety of portable computing devices.'"). (Doc. 26, p. 13). Both of these statements are references to the "engagement" between the mounting members and portable computing device of Claim 4.

To the extent that Ofiyaa has again shifted its approach to this term in its Reply and now asserts that the term should be assigned a different meaning in Claim 4 versus Claim 11, Ofiyaa has not (and cannot) overcome the strong presumption that the same term in different claims of the same patent should have the same meaning. *See In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) ("[T]he principle that the same phrase in different claims of the same patent should have the same meaning is a strong one, overcome only if '*it is clear*' that the same phrase has different meanings in different claims.") (quoting *Fin Control Systems Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001)) (emphasis added); *Phillips,* 415 F.3d at 1314 ("terms are normally used consistently throughout the patent."). Here, the term "for engagement" is used consistently in Claims 4 and 11 according to its plain and ordinary meaning.

Claim 4 states that "one or both mounting members take the form of a bracket having a first portion *for engagement* with the portable computing device and second portion depending from the first portion for bearing the auxiliary screen." (Doc. 27-2, 10:35-39) (emphasis added). Claim 11, which depends from Claim 4, further states that "the second portion comprises a screen mounting formation in the form of a recess or projection *for engagement* with a corresponding projection or recess on an auxiliary screen." (*Id.*, 10:61-64) (emphasis added). In both instances, the term is used to describe features of the mounting members – a first portion "for engagement" (or "for connection") with the portable computing device (Claim 4) and a second portion in the form of a recess or projection "for engagement" (or "for connection") to a corresponding projection or recess on the auxiliary screen (Claim 11). There is no basis to read the additional structural limitation for "interlocking" or "meshing" "under the action of friction and/or gravity in use" into only the use of this term in Claim 11. Claim 11 already contains language that further defines the "engagement" is via recesses or projections on the mounting members and the auxiliary screen.

The term "engagement" is used in other claims of the '757 Patent with no indication that the patentee intended for the term to have one meaning in one context, but a different meaning in another context. For example, as Ofiyaa concedes in its Opening Brief, Claims 8 and 16 use the term "engagement" consistently in the context of "engagement formations," despite the fact that

7

the use in Claim 8 references the "engagement" between the mounting member and the portable computing device, while the use in Claim 16 references the "engagement" between the mounting members and the auxiliary screen. (*Compare* Doc. 27-2, (Claim 8) 10:51-54 ("at least one of said walls comprises a plurality of engagement formation on its internal side so as to define a series of channels offering different fitment depths") *with* (Claim 16) 11:10-13 ("further comprising an auxiliary screen having a screen housing having an engagement formation for mounting the auxiliary screen on the mounting member")). If Ofiyaa's assertion that the "type of engagement" in the first context versus the second context compels an entirely different construction of the term "engagement" in only the second context, the patentee presumably would not have used the exact same phrase – "engagement formation" – in both contexts in the claims. Nor would Ofiyaa have conceded that the "the '757 Patent uses the term 'engagement' synonymously with 'engagement formation'" in its Opening Brief. (*See* Doc. 26, p. 13).

The specification likewise uses the term consistently in both contexts. The specification repeatedly references the "engagement" between the mounting member and the portable computing device and the "engagement" between the mounting member and the auxiliary screen with no indication, much less a clear indication or lexicography, that the term "engagement" means one thing in one context and another thing in another context. (*Compare* Doc. 27-2, 2:46-48 ("An internal surface of the first portion may be shaped *to engage* with a primary screen of the portable computing device…."); 2:48-50 ("The internal surface may comprise one or more ***engagement formation***, such as a groove, channel or striation to closely fit the primary screen."); 2:63-64 ("The second wall may be adapted *to engage* a vertex of a portable computing device.") *with* 3:19-21 ("The screen receiving formation may have a profiled edge ***for engagement*** with a corresponding portion of the auxiliary screen."); 4:20-22 ("The screen housing may comprise a projection arranged ***to releasable engage*** with a mounting member of the screen support system."); 4:50-52 ("An auxiliary screen may be mounted relative to the primary screen of a portable computing device ***by engagement*** between the projection and the mounting member."). The consistent use

8

across both contexts in the specification demonstrates that this term should be construed consistently according to its plain and ordinary meaning.

The Court should assign this term its plain and ordinary meaning, which means "for connection."

### B. The Disputed Terms of the '762 Patent

#### 1. "engaged with and slidable" and "in sliding engagement"

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|---|
| '762 | "engaged with and slidable" | "interlocked or meshed with and capable of sliding" | Plain and ordinary meaning, or "connected and slidable" |
| '762 | "in sliding engagement" | interlocked or meshed with and capable of sliding | Plain and ordinary meaning, or "in a sliding connection with" |

Ofiyaa's assertion that Xebec is somehow taking inconsistent positions by offering similar constructions for the terms "engaged with" and "engagement" is misplaced. As discussed in detail in Xebec's Response, the phrase "engaged with and slidable" is used in Claim 1 to describe the relationship between a first and second part of rails, whereas the phrase "in sliding engagement" is used in Claim 9 to describe the relationship between the first side and second side of the housing. While Xebec asserts that the terms "engaged with" and "engagement" are used consistently in accordance with their plain and ordinary meaning to describe components that are "connected" or "in a connection," the phrases as a whole that Ofiyaa has sought to construe are not exactly the same and are plainly used in different contexts in the claims.

Ofiyaa then repeats the same argument from its Opening Brief that "Figure 8 and the specification depicts and disclose male and female rails interlocking and meshing together via notches and guides" and "[t]he use of interlocking male and female rails is critical to the claimed sliding engagement and overarching utility …." (Doc. 32, p. 9). As discussed in detail in Xebec's Response, Ofiyaa's attempt to limit the scope of Claims 1 and 9 to the male / female rail embodiment shown in Figure 8 is wholly improper, as it violates a cardinal rule of claim construction. *See Philips,* 415 F.3d at 1320.

9

Ofiyaa has also continued to ignore the claim language altogether, including the claim differentiation argument set forth in Xebec's Response. (*See* Doc. 27, pp. 16-17). The claim language demonstrates that the breadth of the connection between the first pair of rails and second pair of rails in Claim 1 is much broader in scope than the specific embodiment shown in Figure 8, as Claims 5 and 6 further define the first pair of rails as having a female and male rail and the second pair of rails as having a female and male rail, respectively. (*See* Doc. 27-3, 5:44-46; 47-54). Moreover, Claim 9 does not mention rails at all, much less the use of interlocking male and female rails. (*See id.*, 5:61-63).

Ofiyaa has also continued to ignore the fact that terms "engaged with" and "engage" are used elsewhere in the claims and the specification in a manner that directly contradicts its attempt to limit these terms to components that are "interlocked" or "meshed." Specific examples of the use of these terms in both the claims and the specification, which were completely ignored in Ofiyaa's Reply, are discussed in detail in Xebec's Response. (*See* Doc. 27, pp. 17-18).

The Court should assign these terms their plain and ordinary meaning, which means "connected" or "in connection with."

    2. **"coupled to"**

| Patent | Claim Term | Ofiyaa's Proposed Construction | Xebec's Proposed Construction |
|---|---|---|---|
| '762 | "coupled to" | "directly connected to" | Plain and ordinary meaning |

While Ofiyaa has shifted its approach to this term and now asserts construction is unnecessary, it is clear that the parties dispute the meaning of this term. Ofiyaa asserted in its Opening Brief that the term "coupled to" must be limited to only a direct connection. (*See* Doc. 26, pp. 17-19). For the reasons set forth in Xebec's Response, (*see* Doc. 27, pp. 18-20), any attempt to limit the term "coupled to" to only a direct connection should be rejected by the Court, as it is contrary to the breadth provided by the plain and ordinary meaning.

## II. CONCLUSION

Accordingly, for the foregoing reasons, Xebec respectfully requests that the Court adopt its proposed constructions for the claim terms in dispute.

Dated: November 29, 2022

                                                */s/ Scott P. Amy*
                                                Scott P. Amy
Georgia Bar No. 141416
s.amy@thip.law
Joseph W. Staley
Georgia Bar No. 142571
j.staley@thip.law
Andrea P. Nguyen
Georgia Bar No. 306931
a.nguyen@thip.law
THOMAS HORSTEMEYER LLP
3200 Windy Hill Road SE
Suite 1600E
Atlanta, GA 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

***Attorneys for Defendant/Counterclaim Plaintiff Xebec, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2022, the foregoing XEBEC, INC.'S SUR-REPLY CLAIM CONSTRUCTION BRIEF was filed using the Court's CM/ECF system, which will automatically send electronic notice of such filing to all attorneys of record in this case.

        /s/ Scott P. Amy
        Scott P. Amy